990 So.2d 716 (2008)
ENTERGY LOUISIANA, LLC
v.
LOUISIANA PUBLIC SERVICE COMMISSION, et al.
No. 2008-CA-0284.
Supreme Court of Louisiana.
July 1, 2008.
*717 Taggart, Morton, Ogden, Staub, Rougelot & O'Brien, Stephen Thomas Perrien, New Orleans, Kathryn J. Lichtenberg, J. Wayne Anderson, New Orleans, Margot Gallup Augustin, Michael J. Plaisance, Kathryn Ann Washington, Margaret Jenkins Savoye, New Orleans; Gordon, Arata, McCollam, Duplantis & Egan, Phillip Jay Antis, Jr., Ewell Elton Eagan, Jr., New Orleans, for appellant.
Stone, Pigman, Walther, Wittmann, Michael R. Fontham, Noel Joseph Darce, Paul Lewis Zimmering, Dana Marie Shelton, New Orleans, Eve Kahao Gonzalez, for appellee.
TRAYLOR, J.
This case comes before us on direct appeal from a ruling of the Louisiana Public Service Commission ("the LPSC"), pursuant to La. Const. art. IV, Section 21(E)[1]. The trial court affirmed LPSC Order U-20925-A (RRF 2004), dated May 16, 2006 ("the May 2006 refund order"), directing Entergy Louisiana, Inc., now known as Entergy Louisiana, LLC ("Entergy Louisiana"), to return interruptible load costs which Entergy Louisiana charged to its retail customers, which were subsequently refunded to Entergy Louisiana pursuant to Federal Energy Regulatory Commission ("the FERC") Opinion Nos. 468 and 468-A ("the FERC Opinions"). We affirm, finding that the LPSC did not act arbitrarily or capriciously in ordering Entergy Louisiana to refund those sums paid by its retail customers for a charge subsequently found to be unallowable by the FERC.

FACTS AND PROCEDURAL HISTORY

Background
The FERC is an independent regulatory agency within the United States Department *718 of Energy which regulates the transmission and sale of electric energy at wholesale in interstate commerce. See 16 U.S.C.A. Section 824 et seq.; 42 U.S.C.A. Section 7101 et seq.
The LPSC is an independent state regulatory agency created pursuant to La. Const. art. IV, Section 21.[2] The LPSC has the power to regulate common carriers and public utilities in Louisiana and "shall exercise all necessary power and authority over any street railway, gas, electric light, heat, power, waterworks, or other local public utility for the purpose of fixing and regulating the rates charged or to be charged by and service furnished by such public utilities." See LSA-R.S. 45:1163(A).
Entergy Corporation is a registered public utility holding company that owns all of the common stock of six public utility companies ("the Operating Companies") that generate and sell electricity in Louisiana, Texas, Mississippi, and Arkansas. The Operating Companies plan, construct, and operate their collective electric generating and transmission facilities as a single, integrated interstate system. The costs and benefits of the coordinated operation of this system are distributed among the Operating Companies pursuant to a rate schedule known as the Entergy System Agreement.
The Entergy System Agreement is approved by the FERC. The System Agreement allows the Operating Companies to enter into arrangements among the companies to exchange resources. The System Agreement consists of various FERCapproved service schedules, including MSS-1,[3] which provides the mechanism for equalizing system reserves among the Operating Companies.
Pursuant to MSS-1 of the System Agreement, each of the Operating Companies is responsible for a share of the total Entergy system capability. Each company's share is equal to the ratio of that company's contribution to the system's peak load. Some of the companies provide more than their calculated share of the system's capability, while others provide less than their calculated share. The companies providing less than their calculated share make deficiency payments to the companies providing more than their share.
Entergy Louisiana is an Entergy Operating Company, engaged in the manufacture, production, transmission, distribution, and sale of electricity throughout Louisiana. Thus, the retail sale of electricity by Entergy Louisiana is subject to the jurisdiction of the LPSC.

*719 FERC Proceedings

On March 15, 1995, the LPSC filed a complaint with the FERC requesting that calculations made by Entergy Operating Companies for interruptible load[4] be removed from the Entergy System Agreement MSS-1 rate schedule. LPSC argued that including the interruptible load calculation in the schedule was unjust and unreasonable since Entergy Corporation did not consider interruptible load when deciding whether to add capacity to the system. After protracted litigation in the FERC and federal court, the FERC issued Opinion No. 468 on March 8, 2004 which held, in pertinent part:
We [FERC] will ... direct the Operating Companies to remove interruptible load when calculating peak load responsibility ratios. We will also direct the Operating Companies to remove interruptible load from Schedule MSS-5 (Distribution of Revenue from Sales Made for the Joint Account of All Companies) and from joint account purchases. Louisiana Public Service Comm'n, et al v. Entergy Corp, et al, Opinion No. 468, 106 FERC P 61228 (March 8, 2004).
FERC ordered that the change enunciated in its March 8, 2004 Opinion would be "effective from the first day of the first month following the date of this order (i.e. April 1, 2004)." Louisiana Public Service Comm'n, et al v. Entergy Corporation, et al, Opinion No. 468, 106 FERC P 61228 (March 8, 2004).
Entergy Services, Inc.[5] filed a request for rehearing and clarification to the FERC following issuance of FERC Opinion No. 468, together with a motion to defer its obligation to submit the compliance filing required by the opinion until the FERC had ruled on Entergy's application for rehearing. In its motion, Entergy Services, Inc. stated, on behalf of the Entergy Operating Companies, that it was "not seeking a stay of the April 1, 2004 effective date of Opinion No. 468 [Entergy's emphasis]." Entergy Louisiana also claimed that, "deferral of the compliance filing will not harm anyone because Entergy is not challenging the April 1, 2004 effective date for the changes imposed in Opinion No. 468."[6]
On April 18, 2005, the FERC issued FERC Opinion No. 468-A, denying rehearing relative to FERC Opinion No. 468. The FERC stated that "Entergy must adjust the system peaks and its rates beginning April 1, 2004, as required by Opinion No. 468." See, Lousiana Public Service Comm'n, et al. v. Entergy Corporation, et al., Opinion No. 468-A, 111 FERC P 61080 (April 18, 2005).[7]

LPSC Proceedings
During the pendency of the FERC proceedings, and separate from the issue of whether or not a charge for interruptible load should be included in capacity costs, Entergy Louisiana submitted a detailed revenue filing with the LPSC in January, *720 2004 seeking a retail base rate increase. This filing was based upon 2002 test year data.[8] In May, 2005, the LPSC and Entergy Louisiana, together with intervening parties, agreed to terms regarding Entergy Louisiana's January, 2004 request for retail base rate increase and the retail base rate was changed. As part of that settlement, the LPSC and Entergy Louisiana agreed that the FERC Opinions effective April 1, 2004,[9] would be implemented by the LPSC as delineated in the LPSC's May 2005 retail base rate order as follows:
7. [Entergy Louisiana] shall immediately reflect the prospective rate effects of Order 468 and Order 468-A of the Federal Energy Regulatory Commission in docket No. EL00-66-000, ER00-2854-000 and EL95-33-002 (Consolidated) in accordance with [Entergy Louisiana's] Formula Rate Plan Rider Section 3.A.4. [Entergy Louisiana's] preliminary estimate is that [Entergy Louisiana's] retail customers should receive a $4.1 million decrease and that decrease will be implemented as of the effective date of this Order [May 25, 2005]. [Entergy Louisiana] is further ordered to provide the Commission, no later than July 15, 2005, with a revised estimate of the rate decrease associated with FERC Nos. 468 and 468-A. If the Commission determines that a further prospective change in [Entergy Louisiana's] rates is warranted by the revised estimate, such further change shall be implemented as directed by the Commission and shall be effective as of the effective date of this Order [May 25, 2005].
8. No later than July 31, 2005, [Entergy Louisiana] shall provide its calculation of the effect of FERC Orders 468 and 468-A on System Agreement charges from April 1, 2004-May 31, 2005.
10. The settlement that we approve is without prejudice to the Commission's position or Entergy's position on whether refunds are appropriate as a result of FERC Orders 468 and 468-A in Docket Nos. EL00-66-0000, ER00-2854-00 and EL95-33-002 (Consolidated), and without prejudice to either party's position on how any prospective rate changes from April 1, 2004 shall be calculated and implemented.
11. [Entergy Louisiana] shall submit responses to the LPSC Staff's discovery requests issued in U-20925 (RRF 2004)[10] on May 6, 2006 as soon as possible, but not later than July 31, 2005 unless the Company is unable to do so for good cause shown.
LPSC Order No. U-20925 RRF 2004 Entergy Louisiana, Inc., Ex Parte (May 25, 2005).
The LSPC's May 2005 retail base rate order further addressed the issue of a refund for the period from April 1, 2004 through May 24, 2005 to be paid to Entergy Louisiana ratepayers:

*721 There remains a dispute between [Entergy Louisiana] and the Commission Staff as to whether any amounts are due [Entergy Louisiana] ratepayers by virtue of Entergy's continued use of interruptible load in determining System Agreement charges from April 1, 2004 (the date of FERC Order 468) and the effective date of this Order. We will address the issue of refunds in a subsequent order after Entergy has responded to the Staff's discovery on this issue, which responses are due no later than July 31, 2005.[11]
The fact that "[n]o party to this proceeding objects to the terms of this settlement as amended in this Order" was memorialized in the May 2005 retail base rate order.[12]
After the retail base rate was changed, Entergy Louisiana provided data to the LPSC showing that Entergy Louisiana had received a net refund from the Entergy Operating Companies of $3,296,149.55, effective April 1, 2004, as a result of the FERC Opinions. Further, Entergy Louisiana removed interruptible load calculations from costs charged to its retail customers as of May 25, 2005. This adjustment was based on Entergy Louisiana's interruptible load calculations for 2004-2005, however, and not the 2002 test year data used to set the retail base rate.
Because 2002 test year data submitted by Entergy Louisiana was used to determine the change to the retail base rate, the LPSC asked for and received from Entergy Louisiana information showing what the removal of interruptible load calculations using the 2002 test year data would be. After receiving this information, the LPSC's Special Counsel submitted a report to the LPSC, recommending the following: (1) a full refund of interruptible load costs paid by Entergy Louisiana retail customers for the time period of April 1, 2004-May 24, 2005 (effective date of the FERC Opinions through the last day of the then-existing retail base rate); and (2) an adjusted refund, based on 2002 test year data, of interruptible load costs paid by Entergy Louisiana retail customers for the time period of May 25, 2005  September 14, 2005 (effective date of the new retail base rate, based upon 2002 test year data, through the effective date of an LPSC special order regarding the sharing of capacity costs after Hurricane Katrina).[13]
The LPSC heard argument on its Special Counsel's report at its March 29, 2006 Business and Executive Session. Entergy Louisiana contested LPSC's authority to make a refund for the period prior to May 25, 2005, arguing that implementation of the FERC Opinions could not be instituted by the LPSC retroactively. Entergy Louisiana also argued that the refund for the period after May 25, 2005 should be based on 2004-2005 data, rather than the 2002 test year data, because the 2004-2005 data reflected actual interruptible load calculations for the time period in which the FERC Opinions were effective. Entergy Louisiana submitted a written response to the LPSC report incorporating these arguments on April 24, 2006.
*722 The LPSC again took up the issue of refunds for the two time periods at its Business and Executive Session of April 26, 2006. Entergy Louisiana's counsel stated that the utility's argument had not changed and requested that a hearing be held on these issues. Entergy Louisiana's counsel was given the opportunity to supplement Entergy Louisiana's documents regarding the refunds, but declined to do so. Thereafter, despite its contention that the LPSC had miscalculated the refund due from May 25, 2005 forward, Entergy Louisiana paid a refund to its retail customers in an amount based on 2004-2005 data, effective May 25, 2005 (the effective date of the LPSC's May 2005 retail base rate order).
The LPSC issued an order on May 16, 2006 ("May 2006 refund order") directing Entergy Louisiana to refund to its retail customers: (1) those sums paid by the retail customers for interruptible load costs from April 14, 2004 through May 24, 2005, which had not been refunded by Entergy Louisiana to its retail customers, and (2) the difference between what Entergy Louisiana refunded to its retail customers for interruptible load costs from May 25, 2005 through September 14, 2005, using 2004-2005 information, and the 2002 test year data.[14] The LPSC stated, in pertinent part:
[T]he Commission must determine the appropriate treatment of the refund and any rate reduction [Entergy Louisiana] received for the period April 1, 2004 through May 24, 2005.... [Entergy Louisiana] has quantified the refund for the relevant period to be $3,296,150. [Entergy Louisiana] objects to flowing through this refund to ratepayers, however, arguing that the Commission cannot order the company to flow through a wholesale rate refund relating to a period prior to the Commission's Order [May 25, 2005].... The Louisiana Supreme Court ruled authoritatively on this issue in Dixie Electric Membership Co-op. v. Louisiana Public Service Comm'n, 509 So.2d 1002 (La.1987).... holding that Dixie Electric's possession of the refund amount was a current condition justifying the Commission's flow-through Order.... [T]he implementation of the FERC decision was delayed at Entergy's request.... The Commission brought the interruptible case at the FERC and would not have ignored the retail impact of its victory. Entergy should not be permitted to benefit by its own request for a delay in the implementation of the FERC ruling.
LPSC Order No. U-20925-A RRF 2004, Entergy Louisiana, Inc., Ex Parte (May 16, 2006) at pages 6-7.
[Entergy Louisiana] asserts that only the going-forward change in MSS-1 receipts, as of 2005, should provide the basis for the additional refund.... The Commission finds that the test year impacts should determine the amount of the refund for the period May 25, 2005 through September 14, 2005. The base rates established on May 25, 2005 reflected conditions in the test year; the only way to adjust these rates properly is to eliminate the interruptible load effects from the test year data.
LPSC Order No. U-20925-A RRF 2004, Entergy Louisiana, Inc., Ex Parte (May 16, 2006) at pages 5-6.
Entergy Louisiana sought judicial review of the LPSC's order.

*723 19th Judicial District Court Proceedings

Entergy Louisiana filed a petition for judicial review of the LSPC's May 2006 refund order in the 19th Judicial District Court, and also applied for an injunction to stay the refund order. The LPSC agreed to the injunction sought by Entergy Louisiana pending the appeal and a preliminary injunction was issued.
After oral argument and a review of the pleadings filed by the LPSC and Entergy Louisiana, the trial court affirmed the LPSC's May 2006 refund order finding that the LPSC did not abuse its discretion in ordering the refund.[15] Entergy Louisiana appealed the trial court's judgment to this court, arguing that the LPSC's actions were arbitrary and capricious. Entergy Louisiana specifically contends that the LPSC's actions are barred by the rule against retroactive ratemaking. Further, Entergy Louisiana argues that the LSPC's actions amount to single-issue ratemaking. Additionally, Entergy Louisiana maintains that the LSPC used incorrect data in calculating the refund and that the utility was denied due process.

STANDARD OF REVIEW
This court has held that an order of the LPSC should not be overturned unless it is arbitrary and capricious, a clear abuse of authority, or not reasonably based upon the factual evidence presented. Entergy Gulf States, Inc. v. Louisiana Public Service Comm'n, XXXX-XXXX, p. 4 (La.8/31/00), 766 So.2d 521, 525; Entergy Gulf States, Inc. v. Louisiana Public Service Comm'n, XXXX-XXXX, p. 6 (La.4/16/99), 730 So.2d 890, 897; Entergy Louisiana, Inc. v. Louisiana Public Service Comm'n, XXXX-XXXX, p. 4 (La.9/9/98), 717 So.2d 217, 218. The function of the reviewing court is not to reevaluate and re-weigh the evidence, or to substitute its judgment for that of the Commission. Washington St. Tammany Electrical Coop., Inc. v. Louisiana Public Service Comm'n, XXXX-XXXX, p. 5 (La.4/8/96), 671 So.2d 908, 912. The Commission is entitled to deference in its interpretation of its own rules and regulations, though not in its interpretations of statutes and judicial decisions. Alma Plantation v. Louisiana Public Service Comm'n, XXXX-XXXX, p. 4 (La.1/14/97); 685 So.2d 107, 110. The Commission's interpretation and application of its own orders deserve great weight because the Commission is in the best position to apply them. Dixie Electric Membership Corp. v. Louisiana Public Service Comm'n, 441 So.2d 1208, 1211 (La.1983). La. Const. art. IV, Section 21(B) confers jurisdiction to the Commission over all common carriers and public utilities. The state's constitution provides the LPSC with broad and independent regulatory powers over public utilities. The LPSC's jurisdiction over public utilities has been labeled by this court as "plenary." Gulf States Utilities Co. v. Louisiana Public Service Comm'n, 578 So.2d 71, 100 (La.1991), cert. denied, 502 U.S. 1004, 112 S.Ct. 637, 116 L.Ed.2d 655 (1991).

DISCUSSION
The issues raised before this court are confined to the implementation by the LPSC of the FERC Opinions in the LPSC *724 May 2006 refund order. There is no dispute in this appeal about refunds for any time period prior to April 1, 2004 (the effective date of the FERC Opinions) or for time periods subsequent to September 14, 2005.
Entergy Louisiana raises the following three assignments of error on appeal to this court: (1) the trial court erred in affirming the LPSC's May 2006 refund order directing Entergy Louisiana to pay a refund to its retail customers for the period April 1, 2004 through May 24, 2005; (2) the trial court erred in affirming the LPSC order directing Entergy Louisiana to pay an adjusted refund, based on 2002 test year data, to its retail customers for the period May 25, 2005 through September 14, 2005; and (3) the district court erred in failing to conclude that Entergy Louisiana had been denied the right to a full evidentiary hearing before the LPSC on the issues addressed in the LPSC's May 2006 refund order.

Refund to Ratepayers  April 1, 2004 through May 24, 2005[16]

1. Retroactive Ratemaking

Entergy Louisiana contends that the LPSC's May 2006 refund order pertaining to the April 1, 2004 through May 24, 2005 time period violates the rule against retroactive ratemaking, as discussed in South Central Bell Telephone Co. v. Louisiana Public Service Comm'n, 594 So.2d 357 (La.1992) (hereinafter "South Central Bell I"). In South Central Bell I, retroactive ratemaking is described, as follows:
[R]etroactive ratemaking occurs when a utility is permitted to recover an additional charge for past losses, or when a utility is required to refund revenues collected pursuant to its lawfully established rates.... A Commission-made rate furnishes the applicable law for the utility and its customers until a change is made by the Commission.... [T]he utility is entitled to rely on a final rate order until a new rate in lieu thereof is fixed by the Commission.... Consequently, the revenues collected under the lawfully imposed rates become the property of the utility and cannot rightfully be made the subject of a refund. South Central Bell I, 594 So.2d at 359 (internal citations omitted).
Entergy Louisiana also argues that base rates can only be changed prospectively by the LPSC, relying on South Central Bell Telephone Co. v. Louisiana Public Service Comm'n, 555 So.2d 1370 (La.1992) (hereinafter "South Central Bell II"). In South Central Bell II, the court held that pervading the utility ratemaking process is the fundamental rule that rates are exclusively prospective in application and that future rates may not be designed to recoup past losses. In other words, neither the Commission nor the courts may order a rate increase that is effective sometime in the past. South Central Bell II, 555 So.2d at 1373-1374.
Entergy Louisiana maintains that the fact situation in South Central Bell I is analogous to the facts presented here. In South Central Bell I, the LPSC issued an order announcing that it was investigating the utility's base rate to determine if its earnings were excessive and whether its rates should be decreased. In this same order, the LPSC notified the utility that certain sums would be collected subject to refund and if the utility's rates were found to be excessive, a refund would be ordered. Upon review, this court held:

*725 The Commission had fixed the company's rates in 1984 after a comprehensive rate case and had amended them slightly on March 1, 1988 in an abbreviated proceeding. The Commission allowed these rates to become final without seeking judicial review. [South Central Bell II, 555 So.2d at 1373, n. 3, 1375]. Subsequently, it notified the company on April 22, 1988 of its contemplated investigation and proceeding against the utility for a rate decrease and refund because of excessive earnings. The extended proceedings that followed revealed that the company had never collected unlawful or improper rates or departed from its filed tariffs. Nevertheless, the Commission determined that the company had been earning too much, fixed its rates at a lower level and ordered it to refund earnings in excess of these rates to customers retroactively to April 22, 1988. South Central Bell I, 594 So.2d at 360.
In reversing the LPSC's refund order in South Central Bell I, this court noted that:
The Commission's refund order was clearly an act of retroactive ratemaking because it divested the company of earnings it had properly derived from then lawful rates fixed by a final order of the Commission. South Central Bell I, 594 So.2d at 360.
Entergy Louisiana contends, in this case, that for the time period of April 1, 2004 through May 24, 2005, the utility collected rates fixed by the Commission and never departed from its filed tariffs. Entergy Louisiana argues that the issuance of the FERC Opinions cannot be substituted for the hearing process as is customarily conducted by the LPSC when base rates are changed. Entergy Louisiana maintains that a change in Entergy Louisiana's retail base rates should only occur when ordered by the LPSC, after a hearing, and then only prospectively.
The LPSC responds that the May 2006 refund order is not a ratemaking order. Rather, the May 2006 refund order represents amounts paid by Entergy Louisiana's retail customers for interruptible load costs from April 1, 2004 until the effective date of the May 2005 retail base rate order, and were not amounts paid by Entergy Louisiana.
Additionally, the LPSC argues that the LPSC's May 2006 refund order is required by law. The LPSC points to this court's holding in Dixie Electric Membership Cooperative v. Louisiana Public Service Comm'n, 509 So.2d 1002 (La.1987), for its position that a FERC-ordered exclusion of interruptible load costs paid by a utility's customers should be passed on to the retail customers and should not inure to the benefit of the utility. In that case, Dixie Electric Membership Cooperative ("Dixie") was a customer of Cajun Electric Membership Electric Cooperative ("Cajun"), which purchased wholesale power from Louisiana Power and Light Company ("LP & L"). In 1974, LP & L filed a tariff with the FERC to govern wholesale sales to its customers. LP & L sold electricity to Cajun pursuant to this tariff and Cajun resold electricity to Dixie. Thereafter, the FERC determined that the tariff filed by LP & L was excessive and ordered LP & L to refund an amount to Cajun representing overcharges during the period October, 1974 through September, 1977. Cajun received the refund from LP & L in 1978.
During the relevant time period, Dixie's retail customers paid the utility's power costs through purchase power adjustment clauses approved by the LPSC. In 1980, Cajun refunded an amount to Dixie, representing the overcharge paid by Dixie's retail customers from 1974 through 1977. Cajun issued the refund in the form *726 of a credit against Dixie's purchased power bill for the month of June. However, Dixie charged its retail customers the full price of the purchased power for that month without applying the refund received from Cajun.
On November 20, 1984, the LPSC ordered Dixie to refund to its ratepayers the sum Dixie had received in 1980 from Cajun. This court determined that the LPSC's refund order was "reasonable and proper and within the ratemaking authority of the Commission." Id. at 1004. This court further stated:
That money should have been refunded to Dixie's customers in November, 1984, or at some point in June, 1980, or thereafter. Those funds, refunded to Dixie by Cajun, had earlier been collected from Dixie's customers between 1974 and 1977 on billings in accordance with rates allowed by the Louisiana Public Service Commission. The continuing failure of Dixie to refund this money to its customers ... is certainly a "current condition," or existing reality which justifed the Commission's regulatory orders in the exercise of its plenary ratemaking authority. Id. at 1007.
LPSC maintains that it is uncontroverted that Entergy Louisiana similarly collected the FERC-prohibited interruptible load costs after April 1, 2004 and argues its May 2006 refund order should be upheld as reasonable and proper and within the ratemaking authority of the LPSC under this court's reasoning in Dixie Electric.
No Louisiana jurisprudence specifically addresses the appropriateness of an LPSC order which implements a FERC-ordered exclusion of costs which, due to protracted litigation and/or FERC or LPSC proceedings, has become, in effect, retroactive. However, our review of case law and the LPSC proceedings herein leads us to conclude that the LPSC's May 2006 refund order is not retroactive ratemaking. Practically speaking, once the FERC determined that Entergy Louisiana was including an unallowable, additional charge to the determination of capacity costs, any reparative action would necessarily have to occur in the future.
It is uncontested that the FERC Opinions eliminated interruptible load from calculations by the Entergy Operating Companies in determining capacity costs effective April 1, 2004. Entergy Corporation never challenged the April 1, 2004 effective date for the changes imposed in the FERC Opinions. While Entergy Louisiana reserved its right to dispute refunds in the implementation by the LPSC of the effects of the FERC Opinions, the utility agreed that the reservation of rights by both parties, entered into in May, 2005, was maintained "to either party's position on how any prospective rate changes from April 1, 2004 shall be calculated and implemented."[17] Entergy Louisiana agreed to and did provide the LSPC with calculations showing the effect of the FERC Opinions on the Entergy System Agreement capacity cost charges from April 1, 2004 through May 24, 2005.
The actions of the parties and the agreements of Entergy Louisiana and the LPSC, as contained in the LPSC May 2005 retail base rate order regarding implementation of the FERC Opinions by Entergy Louisiana, operate to make the April 1, 2004 effective date a "current condition" as contemplated in Dixie Electric Membership Cooperative, supra, regardless of the date on which the LPSC ordered Entergy *727 Louisiana to make actual payment of the refund.
Entergy Louisiana has failed to provide any basis to support its claim that the utility, and not the customers who paid the charges, should be allowed to keep this refund. The reliance of Entergy Louisiana on South Central Bell I is misplaced, since the refund contemplated therein originated with the LPSC and arose from the LPSC's own base rate investigation. In this case, the LPSC refund order arises out of the implementation of a FERC-ordered exclusion of interruptible load costs from the Entergy System Agreement.[18]

2. Single-Issue Ratemaking

Entergy Louisiana further argues that the effect of LPSC's May 2006 refund order for the time period of April 1, 2004 through May 24, 2005 constitutes singleissue ratemaking.
Single-issue ratemaking occurs when a utility's rates are altered on the basis of only one of the numerous factors that are considered when determining the revenue requirements of a regulated utility. Relying on a single case from another jurisdiction[19], Entergy Louisiana claims that single-issue ratemaking is prohibited. Entergy Louisiana acknowledges, however, that the LPSC has previously stated only that "[s]ingle-issue ratemaking is to be avoided."[20]
The LPSC answers that the comprehensive review of a utility's costs and revenues in a base rate case does not preclude a refund of costs collected for the inclusion of interruptible load calculations which have been deemed to be unreasonable, and which should not be included in capacity costs calculations.[21] Additionally, single-issue ratemaking applies to the establishment of rates and is implemented so that a regulator does not grant an increase for a single cost without ensuring that there are no offsetting cost decreases.
We hold that the fact situation here does not concern the establishment of rates. Rather, this case presents us with the question of how a refund should be implemented. Since we find that the May 2006 refund order is not a ratemaking order, Entergy Louisiana has no basis for its contention that the ordered refund constitutes single-issue ratemaking.
Accordingly, we find that the LPSC May 2006 refund order for the April 1, 2004 through May 24, 2005 time period is not arbitrary or capricious. Consequently, the LPSC May 2006 refund order for the applicable time period is a valid exercise of the LPSC's authority to regulate utilities.

Amount of Refund to Ratepayers  May 25, 2005 through September 14, 2005[22]
Entergy Louisiana has already paid a refund to its retail customers in the form *728 of a decrease of charges to its customers from May 25, 2005 through September 14, 2005, based on 2004-2005 data for interruptible load costs. Entergy Louisiana argues that the LPSC should have used 2004-2005 test year data in ordering a refund for this time period since this data reflects interruptible load costs actually incurred at the relevant time.
The LPSC responds that the new retail base rate, effective May 25, 2005, was fixed using 2002 test year data, including 2002 interruptible load costs, submitted by Entergy Louisiana. Entergy Louisiana's customers paid the new rate, established using the 2002 test year data. LPSC argues that the retail customers should obtain a refund for the amounts they actually paid, rather than for the costs Entergy Louisiana incurred in 2004-2005.
We find that Entergy Louisiana's argument is without merit. Entergy Louisiana cannot use 2004-2005 data to refund costs paid for interruptible load by retail customers who have paid these costs based on 2002 data. The decision by the LPSC to base the amount of refund on the 2002 test year data figures was not arbitrary or capricious, and is supported by the record.

Due Process
Entergy Louisiana argues that it was not afforded proper notice of an evidentiary hearing prior to the LPSC's implementation of the FERC Opinions, characterizing the LPSC's implementation of the FERC Opinions as ratemaking. In Gulf States Utilities Company v. Louisiana Public Service Comm'n, 578 So.2d 71, 79-80 (La.1991),[23] this court held that ratemaking bears on a utility's property interest in its base rates. Consequently, Entergy Louisiana relies on Gulf States Utilities Company, to assert that the LPSC was required to hold a hearing prior to its implementation of the FERC Opinions.
The LPSC responds that Entergy Louisiana has not shown why such a hearing is required in this case. Entergy Louisiana itself produced the data used by the LPSC in its determinations and there is no contention by Entergy Louisiana that the information is inaccurate. Moreover, Entergy Louisiana has consistently failed to avail itself of opportunities to present additional evidence or to contest its own data used by the LPSC.
We find this issue has no merit. As previously stated, the May 2006 refund order issued by the LPSC is not a ratemaking order. Rather, the May 2006 refund order implements a refund which became due when FERC ordered that interruptible load costs could not be included in Entergy Louisiana's capacity cost calculations. In addition, we note that Entergy Louisiana agreed to provide the LPSC with data for the implementation of the FERC Opinions in Entergy Louisiana's settlement with the LPSC, as reflected in the May 2005 retail base rate order. Entergy Louisiana provided this data to the LPSC. Entergy Louisiana was *729 given the opportunity to respond to the LPSC's report prepared by its Special Counsel and to present additional evidence. Even though Entergy Louisiana objected at hearings and in argument before the LPSC, the trial court, and this court that it has not been afforded an evidentiary hearing, Entergy Louisiana has not utilized any of the procedural mechanisms to present further evidence for the LPSC's consideration or the consideration of any court. Entergy Louisiana did not supplement its data when given the opportunity to do so at the LPSC meetings. Further, Entergy Louisiana did not petition the LPSC for rehearing pursuant to the LPSC's Rules of Practice and Procedures.[24] Finally, Entergy Louisiana did not request that the trial court remand this proceeding to the LPSC pursuant to La. R.S. 45:1194.[25] Based on the above, we find that Entergy Louisiana's due process argument is without merit.

CONCLUSION
For the reasons set forth above, we hold that Louisiana Public Service Commission Order U-20925-A (RRF2004), dated May 16, 2006, is not arbitrary or capricious and is supported by the record. The judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] La. Const. art. IV, Section 21(E) states, in pertinent part:

Section 21. Public Service Commission
(E) Appeals. Appeal may be taken in the manner provided by law by any aggrieved party or intervenor to the district court of the domicile of the commission. A right of direct appeal from any judgment of the district court shall be allowed to the supreme court.
[2] La. Const. art. IV, Section 21 states, in pertinent part:

Section 21. Public Service Commission
(A) Composition; Term; Domicile. There shall be a Public Service Commission in the executive branch. It shall consist of five members, who shall be elected for overlapping terms of six years at the time fixed for congressional elections from single member districts established by law. Each commissioner serving on the effective date of this constitution shall be the commissioner for the new district in which he resides and shall complete the term for which he was elected. The commission annually shall elect one member as chairman. It shall be domiciled at the state capital, but may meet, conduct investigations, and render orders elsewhere in this state.
(B) Powers and Duties. The commission shall regulate all common carriers and public utilities and have such other regulatory authority as provided by law. It shall adopt and enforce reasonable rules, regulations, and procedures necessary for the discharge of its duties, and shall have other powers and perform other duties as provided by law.
[3] MSS-1 is the rate schedule in the Entergy System Agreement which governs capacity equalization payments.
[4] The "interruptible load" calculation represents electricity sold to a retail customer pursuant to a contract with the retail customer that entitles the Entergy Operating Company to curtail service at certain times.
[5] Entergy Services, Inc. is the management component of Entergy Corporation.
[6] "Motion of Entergy Services, Inc. to Defer Compliance Filing", Louisiana Public Service Commission, et al v. Entergy Corporation, et al, FERC Record (a part of the judicial record), unnumbered Reply Brief on Behalf of the Louisiana Public Service Commission, Attachment 3, page 5.
[7] The LPSC and Entergy Corporation continue to litigate issues arising from the FERC Opinions before the FERC and the United States Court of Appeals, District of Columbia.
[8] Upon application by the utility, the LPSC sets Entergy Louisiana's retail base rate after a review of a twelve month period referred to as a "test year." The test year is typically the most recent annual period from which actual operating data is available. This data is submitted to the LPSC by the utility.
[9] The LPSC could not give immediate effect to the FERC orders eliminating interruptible load from capacity cost calculations as of April 1, 2004, because Entergy Service, Inc. had been granted a stay by the FERC until a decision could be rendered on Entergy's request for rehearing. The FERC decision on rehearing was rendered on April 18, 2005, during the LPSC proceedings on Entergy Louisiana's application for a rate increase filed in January, 2004.
[10] U-20925 (RRF 20004) is the docket number assigned by the LPSC to Entergy Louisiana's January, 2004 application to the LPSC for an increase in the retail base rate.
[11] LPSC Order No. U-20925 RRF 2004 Entergy Louisiana, Inc., Ex Parte 11 (May 25, 2005) at page 4.
[12] LPSC Order No. U-20925 RRF 2004 Entergy Louisiana, Inc., Ex Parte (May 25, 2005) at page 4.
[13] LPSC Special Order No. 40-2005 Entergy Louisiana, Inc. and Entergy Gulf States, Inc., Ex Parte (September 14, 2005) was issued by the LPSC in response to Entergy Louisiana's request that the utility be allowed to recover capacity and energy costs associated with contracts between Entergy Louisiana, Entergy Gulf States, Inc. and Entergy New Orleans, Inc.
[14] This is a greater amount than the refund Entergy Louisiana paid based on 2004-2005 data.
[15] The LPSC order essentially ordered one refund for two time periods. For the first time period, the LPSC ordered a refund from April 1, 2004 through May 24, 2005 for which Entergy Louisiana had failed to implement the FERC Opinions at all. For the second time period, the LPSC ordered an adjusted refund for May 25, 2005 through September 14, 2005, based on the 2002 test year data, which had been used to determine the changed retail base rate, rather than the 2004-2005 data, which is what Entergy Louisiana paid as a refund to its retail customers.
[16] April 1, 2004 through May 24, 2005 is the period subsequent to the effective date of the FERC Opinions, but prior to the effective date of the LPSC's May 2004 retail base rate order.
[17] LPSC Order No. U-20925 RRF 2004 Entergy Louisiana, Inc., Ex Parte (May 25, 2005) at page 4 (emphasis added).
[18] Likewise, this court's reversal of the LPSC's refund order in Global Tel*Link, Inc. v. Louisiana Public Service Comm'n, XXXX-XXXX (01/21/98), 707 So.2d 28 is not applicable to the instant case. The LPSC refund order in Global Tel*Link, Inc., supra, was based upon enforcement of LSPC rate orders and not from an LPSC refund order arising out of the implementation of a FERC-ordered exclusion of interruptible load costs from the Entergy System Agreement.
[19] Business and Professional People for the Public Interest v. Illinois Commerce Comm'n, 146 Ill.2d 175, 244, 166 Ill.Dec. 10, 585 N.E.2d 1032 (Ill.1991).
[20] Entergy Louisiana cites to LPSC Order No. U-22491 (April 4, 2000), which was issued by the LPSC regarding the fixing of retail base rates for Entergy Gulf States, Inc., in 2000.
[21] See, the FERC Opinions.
[22] May 25, 2005 through September 14, 2005 is the period subsequent to the effective date of the LPSC's May 2005 retail base rate order, but prior to the effective date of the LPSC's special order regarding capacity costs collected by Entergy Louisiana following Hurricane Katrina.
[23] In Gulf States Utilities Company v. Louisiana Public Service Comm'n, the utility complained that it had been denied due process because a hearing examiner failed to prepare a report on his findings of fact. The utility also maintained that it was denied due process since the LPSC's majority opinion was authored by the LPSC's counsel who had acted as the company's representative during hearings. This court held that the LPSC order was rendered in accordance with the LPSC's constitutional and statutory authority and with the due process requirements of an administrative hearing. 578 So.2d 71, 84 (La.1991).
[24] Rules of Practices and Procedures of the Louisiana Public Service Commission

Part VII. Evidence
Rule 43. Where the Commission concludes that substantial errors of procedure or the exclusion of evidence have so affected the record as to render it impracticable to determine the case justly and fairly upon the record, it may order a rehearing on its own motion; it may also order a rehearing on motion of any party provided said motion is received within ten (10) days of the mailing of the order, rule, or other action complained of.
[25] Title 45. Public Utilities and Carriers

Section 1194. Contest of acts of commission; evidence not offered before commission; remand to the commission.
Upon the trial of any suit brought to contest any decision, act, rule, rate, charge, classification, or order of the commission, no party shall be allowed to introduce evidence different from that which was offered in the proceeding before the commission, unless the reviewing court determines that the additional evidence is important to the cause and could not have been obtained with due diligence by the party before or during the proceeding before the commission. If the reviewing court determines that a party should be permitted to introduce additional evidence, the court shall remand the proceeding to the commission for the commission to consider the additional evidence. Upon remand, the commission may amend, rescind, or reinstate the action complained of in the suit.