FOR IMMEDIATE NEWS RELEASE

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **15th day of March, 2017**, are as follows:

**BY GENOVESE,J.**:

2016-CA-0424    ENTERGY LOUISIANA, LLC v. LOUISIANA PUBLIC SERVICE COMMISSION, CONCORDIA ELECTRIC COOPERATIVE INC. (Parish of E. Baton Rouge)

For the reasons stated herein, the judgment of the district court is reversed, and Louisiana Public Service Commission Order No. U-32980 is hereby reinstated. All costs are assessed against Entergy Louisiana, LLC.
REVERSED.

SUPREME COURT OF LOUISIANA

No. 2016-CA-0424

ENTERGY LOUISIANA, LLC

VERSUS

LOUISIANA PUBLIC SERVICE COMMISSION,
CONCORDIA ELECTRIC COOPERATIVE INC.

ON APPEAL
FROM THE NINETEENTH JUDICIAL DISTRICT COURT,
FOR THE PARISH OF EAST BATON ROUGE

GENOVESE, J.

This electrical service provider case comes before us on direct appeal pursuant to La.Const. art. 4, § 21(E)[1] for our review of a district court judgment reversing Louisiana Public Service Commission (LPSC) Order No. U-32980. Because we find that the LPSC did not act arbitrarily and capriciously in reaching its decision, we reverse.

FACTS AND PROCEDURAL HISTORY

This action arises out of the construction of a facility by United Plant Services (UPS), in Trout, Louisiana, to which Entergy Louisiana, LLC (Entergy) provides electric services. Entergy's competitor, Concordia Electric Cooperative, Inc. (Concordia), filed a complaint with the LPSC asserting that Entergy's service to the UPS facility violates La.R.S. 45:123 and LPSC General Order No. R-28269,

---

[1] This court's appellate jurisdiction over Louisiana Public Service Commission proceedings is conferred by La.Const. art. 4, § 21(E) which provides:

> Appeals. Appeal may be taken in the manner provided by law by any aggrieved party or intervenor to the district court of the domicile of the commission. A right of direct appeal from any judgment of the district court shall be allowed to the supreme court. These rights of appeal shall extend to any action by the commission, including but not limited to action taken by the commission or by a public utility under the provisions of Subparagraph (3) of Paragraph (D) of this Section.

collectively referred to as the 300 Foot Rule, by providing service to UPS at a point of connection Concordia presumed to be within 300 feet of its existing electrical lines.

UPS is a family-owned company that provides machine repair services. UPS planned construction of a building on a ten-acre parcel of land it owned in Trout located at the intersection of Highway 8, its northern boundary, and Hanger Road, its eastern boundary. Prior to the construction of the building, Concordia and Entergy were in competition to provide electric services to the proposed UPS facility. At that time, Concordia had existing electric lines running along both Highway 8 and Hanger Road, within 300 feet of the property.

In December 2012, Concordia drafted a letter to UPS offering to provide electric services. UPS did not respond to Concordia's letter. In January 2013, Entergy provided UPS with a letter of intent requesting that it be selected to provide electrical services to UPS. UPS signed Entergy's letter of intent prior to the commencement of construction of the building. In February 2013, Entergy became aware that its competitor, Concordia, had existing lines in the area. In the summer of 2013, Entergy constructed its own electric lines to serve the UPS facility. The construction of the new electric lines, estimated to be 2,500 to 3,000 feet from the nearest Entergy facility, was undertaken by Entergy before an actual contract was signed with UPS.

Proceeding towards the construction of the building, UPS's architect prepared drawings showing three alternative placements of the building on the ten-acre tract: one at 100 feet from Hanger Road; the second at 150 feet from Hanger Road; and the third at 200 feet from Hanger Road. Once construction was completed, the eastern corner of the building was 125 feet from the Hanger Road property boundary. The result of this placement was that the entirety of the UPS

2

facility was located within 300 feet of Concordia electric lines, except for a triangular portion measuring twelve feet by twelve feet by six feet. The electric meter for the building is located within this triangular space placing it between 302 and 315 feet from various points along Concordia's lines.

Concordia filed a complaint against Entergy with the LPSC, alleging that Entergy violated La.R.S. 45:123(A)[2] and LPSC General Order No. R-28269(D),[3] the 300 Foot Rule, in providing electric service to UPS. Concordia later contended that UPS and Entergy intentionally circumvented the 300 Foot Rule by placing its

---

[2] Louisiana Revised Statutes 45:123(A) provides:

> A. (1) No electric public utility shall construct or extend its facilities or furnish or offer to furnish electric service to any point of connection which at the time of the proposed construction, extension, or service is being served by, or which is not being served but is located within three hundred feet of an electric line of another electric public utility, except with the consent in writing of such other electric public utility. However, nothing contained herein shall preclude:
>
> (a) Any electric public utility from extending service to an applicant for service at an unserved point of connection located within three hundred feet of an existing electric line of such electric public utility, unless:
>
> (i) Such line was not in operation on April 1, 1970, and
>
> (ii) The point of connection is located within three hundred feet of an existing electric line of another electric public utility, which line was in operation on said date, or
>
> (b) Any electric public utility from extending service to its own property or to another electric public utility for resale.

[3] The LPSC General Order No. R-28269(D) provides in pertinent part:

> Intent of Commission:
>
> It is the determination of this Commission that, in order to effect economies in the services of electricity, and thereby maintain reasonable rates, uneconomic and wasteful practices should be prohibited. As a result, the needless paralleling and duplication of existing transmission or distribution lines or the extensions thereof, by electric public utilities in order to serve customers readily accessible to like facilities of an electric public utility already providing service in the immediate area, should be discouraged.

Consistent with its purpose, the LPSC General Order No. R-28269, Ordering Section (3)(I) further provides: "Where necessary, the Commission shall determine whether the choice of the meter location was intended to circumvent this General Order prohibiting the needless duplication or extension of facilities."

meter at a distance beyond 300 feet from Concordia's lines.[4]  Entergy countered that the location of the meter was predicated on UPS business needs and safety concerns and that the meter placement was not by design in circumvention of the 300 Foot Rule.

The matter was presented to an Administrative Law Judge (ALJ).  Following the hearing, the LPSC staff filed a post-hearing brief stating that "[t]he placement of the meter becomes so convenient as to strain credulity when viewed in context of the other circumstances[.]"  Further, "[a]ccording to the totality of the circumstances, Staff is of the opinion that Concordia has presented a preponderance of evidence to suggest that either UPS and/or [Entergy] intended to circumvent the 300 Foot Rule."  Finally, it was the LPSC's staff conclusion and recommendation that the ALJ order Entergy "to disconnect its facilities from the UPS Facility property, and to authorize Concordia to begin providing electrical service to the building."

The ALJ, however, issued a Proposed Recommendation that the LPSC dismiss Concordia's claims based upon its finding that Concordia failed to show that UPS or Entergy had intentionally placed the building and the meter in circumvention of the 300 Foot Rule, thereby enabling UPS to select Entergy as opposed to Concordia as its electric service provider.  Concordia filed exceptions to the ALJ's Proposed Recommendation.  Upon the retirement of the ALJ, the action was reassigned to another ALJ, who denied Concordia's exceptions and issued a Final Recommendation adopting and reinstating the Proposed Recommendation.

---

[4] Entergy and Concordia reached a stipulation during the course of the LPSC proceedings, once surveys had been conducted, that the location of the UPS meter was not within 300 feet of Concordia's electric lines.

During its monthly Business and Executive Session, the LPSC considered the ALJ's Final Recommendation. The recommendation of the ALJ was unanimously rejected by the LPSC, which found a violation of the 300 Foot Rule, and issued Order No. U-32980 concluding as follows:

> The ALJ's recommendation was considered by the Commission at its June 24, 2015 Business and Executive Session. Following a lengthy discussion and oral arguments by each side, the Commission on motion of Commissioner Campbell, seconded by Chairman Holloway, and unanimously adopted, voted to reject the ALJ's recommendation and based on the evidence in the record and heard before the Commission at oral argument, the Commission found that Entergy violated the 300 Foot Rule in serving UPS. If there should be an appeal, and Entergy loses the appeal, Entergy shall immediately disconnect its facilities from UPS and reimburse Concordia for its losses associated with Entergy's service of UPS from the date of this order.

Entergy filed a petition for appeal and judicial review of LPSC Order No. U-32980 in the Nineteenth Judicial District Court, and Concordia filed a Petition for Intervention in that proceeding. Following oral argument, the district court reversed the LPSC's decision, finding it to be arbitrary and capricious. The district court gave the following brief oral reasons for judgment:

> The court is of the opinion that the Commission's reversal of the ALJ recommendation is certainly arbitrary and capricious based upon the evidence in the record. The court is firmly of the opinion that the customer chose the carrier for the complete fair nexus within the 300-foot rule. Therefore, to the extent that action is inconsistent with this court's ruling, it's hereby reversed.

The district court's ruling was reduced to a written judgment stating in pertinent part:

> **IT IS FURTHER ORDERED** that Order No. U-32980 is arbitrary and capricious and hereby reversed, and that the Administrative Law Judge's Final Recommendation in favor of [Entergy] be and hereby is reinstated.

The LPSC and Concordia thereafter sought a direct appeal to this court to review the judgment of the district court. For the following reasons, we reverse.

5

**DISCUSSION**

The LPSC has jurisdiction over the regulation of public utilities, including electrical service providers. The LPSC's jurisdiction is conferred by La.Const. art. 4, § 21(B) which states:

> Powers and Duties. The commission shall regulate all common carriers and public utilities and have such other regulatory authority as provided by law. It shall adopt and enforce reasonable rules, regulations, and procedures necessary for the discharge of its duties, and shall have other powers and perform other duties as provided by law.

This constitutional provision grants the LPSC "broad and independent regulatory powers over public utilities. The LPSC's jurisdiction over public utilities has been labeled by this court as 'plenary.'" *Entergy Louisiana, LLC v. Louisiana Public Service Comm'n*, 08-284, p. 11 (La. 7/1/08), 990 So.2d 716, 723 (quoting *Gulf States Utilities Co. v. Louisiana Public Service Comm'n*, 578 So.2d 71, 100 (La.1991), *cert. denied*, 502 U.S. 1004, 112 S.Ct. 637, 116 L.Ed.2d 655 (1991)).

In furtherance of the regulation of electrical service lines, the 300 Foot Rule provides that no public utility may extend electric service to any "point of connection"[5] already receiving service from another utility or to any new point of connection located within 300 feet of the existing lines of a competing electric utility. If two or more electric public utilities have existing lines within 300 feet of a point of connection, the customer may choose among those electric service providers.[6] Additionally, and pertinent to the instant matter, the LPSC may determine if the location of a point of connection was chosen for the purpose of

---

[5] "Point of Connection" is defined as the "meter location or point where electric public utility facilities meet the facilities owned by the customer." LPSC General Order No. R-28269, Ordering Section (2)(h).

[6] This is true unless one of the lines was in operation as of April 1, 1970, in which instance, that provider has the exclusive right to serve the customer. La.R.S. 45:123(A)(1)(a)(i).

6

circumventing the provisions of the 300 Foot Rule. The LPSC has the authority to order that a service be changed, and it may penalize an errant utility service provider if the provider is found to have either directly violated the 300 Foot Rule or circumvented the rule in the placement of the point of connection.

On appeal, Concordia and the LPSC contend that the district court erred in reversing LPSC Order No. U-32980 and reinstating the recommendation of the ALJ. Thus, we must consider whether LPSC Order No. U-32980 is arbitrary and capricious.

The applicable standard of review when considering whether a decision of the LPSC is arbitrary and capricious has been stated several times by this court. In *Entergy Louisiana, LLC v. Louisiana Public Service Commission*, 990 So.2d at 723, we opined:

> This court has held that an order of the LPSC should not be overturned unless it is arbitrary and capricious, a clear abuse of authority, or not reasonably based upon the factual evidence presented. *Entergy Gulf States, Inc. v. Louisiana Public Service Comm'n*, 2000-0336, p. 4 (La. 8/31/00), 766 So.2d 521, 525; *Entergy Gulf States, Inc. v. Louisiana Public Service Comm'n*, 1998-1235, p. 6 (La. 4/16/99), 730 So.2d 890, 897; *Entergy Louisiana, Inc. v. Louisiana Public Service Comm'n*, 1998-0475, p. 4 (La. 9/9/98), 717 So.2d 217, 218. The function of the reviewing court is not to reevaluate and re-weigh the evidence, or to substitute its judgment for that of the Commission. *Washington St. Tammany Electrical Coop., Inc. v. Louisiana Public Service Comm'n*, 1995-1932, p. 5 (La. 4/8/96), 671 So.2d 908, 912. The Commission is entitled to deference in its interpretation of its own rules and regulations, though not in its interpretations of statutes and judicial decisions. *Alma Plantation v. Louisiana Public Service Comm'n*, 1996-1423, p. 4 (La. 1/14/97); 685 So.2d 107, 110. The Commission's interpretation and application of its own orders deserve great weight because the Commission is in the best position to apply them. *Dixie Electric Membership Corp. v. Louisiana Public Service Comm'n*, 441 So.2d 1208, 1211 (La. 1983).

Additionally, "[a] person attacking a [LPSC] order bears a high burden of demonstrating that it is defective. *Louisiana Power & Light Co. v. Louisiana Public Service Com'n*, 609 So.2d 797, 799-800 (La.1992)." *Washington St.*

*Tammany Elec. Coop., Inc. v. Louisiana Public Service Comm'n*, 07-399, p. 7 (La. 6/29/07), 959 So.2d 450, 455.

In this case, the parties have stipulated that the meter in UPS's facility is located at a distance outside of 300 feet from Concordia's lines. Thus, the relevant inquiry is whether or not the placement of the meter was an intentional circumvention of the 300 Foot Rule. The LPSC determined that it was. We must determine whether this decision of the LPSC is arbitrary and capricious.

This court has reviewed the evidence. Based upon the record, and mindful that we are not to reevaluate the evidence and substitute our judgment for the findings of LPSC, we do not find the decision of the LPSC to be arbitrary and capricious. Undisputedly, the record contains documentary evidence and contradicting testimony requiring credibility determinations and inferences. However, we conclude that the LPSC's decision that Entergy acted in violation of the 300 Foot Rule is "reasonably based upon the factual evidence presented." *Entergy Louisiana, LLC v. Louisiana Public Service Comm'n*, 990 So.2d at 723.

Whether the placement of UPS's building was intentional is disputed by the parties. Entergy maintains UPS's Project Manager, David Grant, working with a third party architect, provided UPS with three alternative placements of the building on the ten-acre tract. The UPS home office had the ultimate decision on where the building was to be placed, and the 300 Foot Rule was not a factor. Likewise, it was irrelevant whether Concordia or Entergy were going to provide service to the facility. Entergy denied being involved in any way in UPS's decision on the placement of the building.

Entergy also denies that the building was moved in order to manipulate the ultimate meter location. Mr. Grant explained that UPS wanted the building to be located 100 feet from the Hanger Road boundary to provide ample room for

expansion in the future, but its placement at a precise distance from Hanger Road was not critical. Additionally, Entergy discounts the discrepancy between the intended 100 feet and actual 125 feet distance as being a "mistake." Mr. Grant's measurements were done before the property was cleared, and he did not know exact boundary lines. He made the measurement to the best of his ability, given his knowledge, the terrain, and his physical restrictions.

In addition to the placement of the building, the parties also dispute the purpose for the placement of the meter. Entergy maintains it established through Mr. Grant's testimony that the placement of the meter was based upon UPS's legitimate business and safety considerations. Mr. Grant testified that he worked with a third party electrician, and his decision on the meter location was dictated by the placement of a 44-inch transformer, which necessarily had to account for equipment traffic, machinery, offices, and areas of moisture. According to Mr. Grant, this was the "one and only place" that the meter could be located so as not to interfere with UPS business and safety needs. Mr. Grant denied that the 300 Foot Rule was a consideration.

Concordia counters that Entergy acted in disregard for the 300 Foot Rule and did nothing to ensure its compliance even before getting UPS to execute the letter of intent. Despite this lack of knowledge, Entergy's customer service specialist, Ms. Theresa Johns, testified that she was "certain" that Entergy could serve UPS, or, she was at least "hopeful" to do so without any apparent basis for such optimism. Given the presence of Concordia's existing lines on two sides of the ten-acre tract, Concordia questioned Entergy's decision to rebuild one of its single-phase lines, which was over a mile away from the UPS property, convert it to a three-phase line, and then extend the three-phase line 2,500 to 3,000 feet with the mere hope of serving the UPS facility.

Turning to the placement of the building, Concordia directs this court's attention to the plats of survey admitted into evidence which clearly show that nearly the entire UPS facility is located within 300 feet of Concordia's lines. Although Mr. Grant was adamant that this measurement was of no concern to UPS, Concordia and the LPSC point out Mr. Grant's inability to explain the discrepancy between UPS's initial decision to locate the building within 100 feet of Hanger Road and its ultimate placement 125 feet from Hanger Road other than that it was a "mistake." Had the building been positioned 100 feet from Hanger Road, but for a "mistake," the entire building, and thus, necessarily the meter, would have been within 300 feet of Concordia's lines.

The testimony of Ms. Johns is also cited to refute Mr. Grant's testimony that the 300 Foot Rule was not a factor in the building's placement. According to Ms. Johns, once she was aware of the presence of Concordia's electric lines, she informed UPS that Entergy could not serve them if the meter was located within 300 feet of that line. Additionally, Ms. Johns testified that Mr. Grant told her that he was aware of the 300 Foot Rule, having spoken to employees of Concordia. Therefore, the record reflects that the personnel involved in making the decision were aware of the 300 Foot Rule, were aware of the existing lines, and were aware of the consequences thereof.

Apart from whether the ultimate building placement was a "mistake," Concordia and the LPSC dispute that the location of the meter itself—in a twelve foot by twelve foot by six foot triangle, located directly in the middle of the building, and in the only portion of the building located further than 300 feet from Concordia's lines—was by mere coincidence. They contend that this is further evidence of an intentional placement so as to locate the meter beyond 300 feet of Concordia's lines.

10

In addition to disputing Mr. Grant's stated reasons for UPS's placement of the building, Concordia and the LPSC also dispute the purported reasons of business and safety concerns expressed by Mr. Grant relative to the meter placement. Although Mr. Grant first insisted that the meter location was "the one and only place" that it could go, they argue that he later admitted that the meter could have been placed at other locations in the building and still have been away from the traffic of which he expressed concern. It is asserted that "Mr. Grant's refusal to admit knowledge of the 300 Foot Rule, his explaining the location of the building as a mistake[,] and his refusal to concede the obvious on re-cross[,] all suggest a lack of credibility[.]" Further, Ms. John's "certainty," coupled with Mr. Grant's testimony, demonstrate "that a decision was made to locate this building and this meter so as to circumvent the 300 Foot Rule." To conclude otherwise, they argue, "requires a belief that a comedy of mistakes and errors resulted in Entergy's ability to serve the load in question and that Entergy [constructed] thousands of feet of line to serve this load with the mere hope that the comedy would develop."

The LPSC's authority to protect against the duplication of electric lines and its authority to determine whether a meter placement was done to circumvent the 300 Foot Rule were considered by this court in *Washington St. Tammany Electric Cooperative, Inc. v. Louisiana Public Service Commission*, 959 So.2d 450. In that case, similar to the case at bar, Washington St. Tammany Electric Cooperative, Inc. (WST) argued that valid reasons existed for the choice of a meter location a distance away from a sewer lift station which resulted in the meter being located in excess of 300 feet from an existing electric line of its competitor. Notably, there was no admission, testimony, or other direct evidence that the meter was

purposefully located in order to circumvent the 300 Foot Rule. The LPSC rejected WST's purported reasons, and this court upheld the decision of the LPSC finding:

> While the Commission does not have the authority to tell private individuals where they can install their meters, the Commission has the explicit authority to prohibit the needless duplication or extension of facilities, and it currently does that by enforcement of the 300 Foot Rule. Pursuant to General Order dated May 26, 2004, the Commission may determine whether a meter location has been selected to circumvent the 300 Foot Rule, regardless of whether that selection was made by the utility or the customer. Further, the Commission can, without question, prevent an electric utility from providing service to a point of connection that circumvents the 300 Foot Rule. . . . The Commission found that the meter location was chosen in an attempt to circumvent the 300 Foot Rule, and there is a reasonable evidentiary basis in the record to support this finding.

*Id.* at 459.

In the instant case, the LPSC reached differing conclusions from those of the ALJ and the district court. The LPSC considered that had the UPS building been positioned within 100 feet of Hanger Road, as was the design, the entire building would have been within 300 feet of Concordia's lines, which would have given Concordia exclusive rights to provide electrical services to the facility. Moreover, whether or not it was due to a "mistake," the actual placement of the meter in a twelve foot by twelve foot by six foot triangle, in the center of the UPS building, was the only location it could have been placed and still be outside of 300 feet of Concordia's lines. Any other location of the meter would have been within 300 feet of Concordia lines and would have given Concordia an exclusive right to serve the UPS facility. The LPSC, using its own judgment and evaluation of the evidence, unanimously rejected the reasons presented by Entergy and found that the evidence did support a conclusion that the 300 Foot Rule was intentionally circumvented. We find that there was a reasonable evidentiary basis for the decision of the LPSC. Thus, Entergy has not met its high burden of proving that the decision of the LPSC was arbitrary and capricious.

## CONCLUSION

For the reasons set forth above, we find that Louisiana Public Service Commission Order No. U-32980 is not arbitrary and capricious and that there is a reasonable basis therefor in the record.

## DECREE

For the reasons stated herein, the judgment of the district court is reversed, and Louisiana Public Service Commission Order No. U-32980 is hereby reinstated. All costs are assessed against Entergy Louisiana, LLC.

**REVERSED.**